**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **YANGZENG YU,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. <u>3:22-cv-00643</u>** |
| ) | |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** ) | |
| **SERVE:   David N. Anthony, Reg. Agent** ) | |
| **TROUTMAN SANDERS, LLP** ) | |
| **1001 Haxall Point** ) | |
| **Richmond, VA 23219** ) | |
| ) | |
| **TRANS UNION, LLC,** ) | |
| **SERVE:   Corporation Service Company, Reg. Agent** ) | |
| **100 Shockoe Slip** ) | |
| **2nd Floor** ) | |
| **Richmond, VA 23219** ) | |
| ) | |
| **JPMORGAN CHASE BANK, N.A.,** ) | |
| **SERVE:   CT Corporation System, Reg. Agent** ) | |
| **4701 Cox Road** ) | |
| **Suite 285** ) | |
| **Glen Allen, VA 23060-6808** ) | |
| ) | |
| **and** ) | |
| ) | |
| **BARCLAYS BANK DELAWARE,** ) | |
| **SERVE:   125 South West Street** ) | |
| **Wilmington, DE 19801** ) | |
| ) | |
| **Defendants.** ) | |

**<u>COMPLAINT</u>**

COMES NOW the Plaintiff, YANGZENG YU, by counsel, and for his complaint against each of the Defendants, alleges as follows:

# I.

## PRELIMINARY STATEMENT

1.      Defendants EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, JPMORGAN CHASE BANK, N.A., and BARCLAYS BANK DELAWARE have violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") by improperly reporting on Plaintiff's credit inaccurate and derogatory information regarding accounts that do not belong to Plaintiff.

2.      Despite receiving from Plaintiff multiple dispute letters and supporting documentation requesting that the inaccurate derogatory reporting be corrected, Defendants EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and JPMORGAN CHASE BANK, N.A. improperly reported and continue to report inaccurate and derogatory information on Plaintiff's credit regarding credit card accounts that do not belong to Plaintiff.

3.      Despite receiving from Plaintiff multiple dispute letters and supporting documentation requesting that the inaccurate derogatory reporting be corrected, Defendants EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and BARCLAYS BANK DELAWARE improperly reported inaccurate and derogatory information on Plaintiff's credit regarding a credit card account that does not belong to Plaintiff.

4.      Defendants' violations include failing to properly investigate Plaintiff's disputes and failing to maintain reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's credit files. Through these failures, and by improperly reporting on Plaintiff's credit, each of the Defendants have violated Plaintiff's rights under the FCRA. Accordingly, Plaintiff seeks actual damages, attorney's fees and costs, and punitive damages for Defendants' willful violations of the FCRA.

## II.

### JURISDICTION AND VENUE

5.      The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. §1331.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## III.

### PARTIES

7.      Plaintiff YANGZENG YU ("Mr. Yu" or "Plaintiff") is a natural person and "consumer" as defined by § 1681a(c) of the FCRA. Mr. Yu resides in the County of Henrico, Virginia, which falls within the Richmond Division of the Eastern District of Virginia.

8.      Defendant EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is a corporation formed in Ohio and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

9.      Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

10.     Experian disburses consumer reports to third parties, under contract, for monetary compensation.

11.     Defendant TRANS UNION, LLC ("Trans Union") is a limited liability company formed in Delaware and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

12.     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

13.     Trans Union disburses consumer reports to third parties, under contract, for monetary compensation.

14.     Defendant JPMORGAN CHASE BANK, N.A. ("Chase") is a national banking association authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia. Chase conducts business in the Commonwealth of Virginia, with consumers in Virginia.

15.     With respect to the accounts it reported on Plaintiff's credit, Chase is a "furnisher" as governed by the FCRA.

16.     Defendant BARCLAYS BANK DELAWARE ("Barclays") is a corporation formed in Delaware with its headquarters located at 125 South West Street, Wilmington, Delaware 19801. Barclays conducts business in the Commonwealth of Virginia, with consumers in Virginia.

17.     With respect to the accounts it reported on Plaintiff's credit, Barclays is a "furnisher" as governed by the FCRA.

## IV.

## FACTS

### A.    Background

18.     In May 2020, Plaintiff sought to purchase a new home. Plaintiff approached RVA Mortgage Brokers, located in Richmond, Virginia, regarding options for financing the purchase of a new home.

19.     On or about May 12, 2020, in connection with his mortgage inquiry, Plaintiff submitted a credit application to RVA Mortgage Brokers. Plaintiff's credit application was denied. Upon information and belief, in making its decision to deny the extension of credit to Plaintiff, RVA Mortgage Brokers relied on consumer reports furnished by Experian and Trans Union, which included inaccurate information regarding Plaintiff. Specifically, Experian and Trans Union were each reporting inaccurate and derogatory information regarding several credit accounts that did not belong to Plaintiff.

20.     Experian and Trans Union were inaccurately reporting the following derogatory accounts as belonging to Plaintiff: (i) two credit card accounts with Chase, opened on April 12, 2018 and August 14, 2018, respectively, and both subsequently charged off with balances owed (collectively, the "Chase Accounts"), and (ii) a credit card account with Barclays, opened on July 1, 2018, and subsequently charged off with a balance owed (the "Barclays Account").

21.     Plaintiff did not open or authorize the opening of the Chase Accounts or the Barclays Account, and none of the credit account information related to those accounts being reported on Plaintiff's credit is attributable to Plaintiff.

22.     Prior to RVA Mortgage Brokers informing Plaintiff on May 12, 2020 that the Chase Accounts and Barclays account were being reported on his credit, Plaintiff was not aware

that those accounts existed or that they were being reported on his credit. Plaintiff later learned that the accounts were opened using an address at which Plaintiff never resided.

23.     On May 12, 2020, after learning that credit accounts that did not belong to him were being reported on his credit, Plaintiff filed an Incident Crime Report with the Henrico County Police Department, report no. 200512080, alleging the fraudulent use of his personal information to open the unauthorized Chase Accounts and Barclays Account (the "Police Report"). The Police Report is an identity theft report, as that term is defined by 12 CFR § 1022.3(i)(1).

24.     Beginning in or around August 2020 and continuing through February 2021, in an effort to resolve the fraudulent accounts appearing on his credit, Plaintiff communicated directly with both Chase and Barclays via several telephone calls, facsimile transmissions, and mailed correspondence, advising that the Chase Accounts and Barclays Account were not opened by and did not belong to Plaintiff.

**B.      Plaintiff's September 2020 Disputes**

25.     In or around September 2020, Plaintiff submitted disputes to Experian and Trans Union, asserting that the Chase Accounts and Barclays Account did not belong to him, and requesting that those accounts be removed from his credit file (the "September 2020 Disputes").

26.     Plaintiff does not have any record of receiving any reinvestigation results from Experian in response to his September 2020 Dispute to Experian.

27.     In response to Plaintiff's September 2020 Dispute to Trans Union, Trans Union mailed to Plaintiff its reinvestigation results, dated October 2, 2020.

28.     In its October 2, 2020 reinvestigation results, Trans Union advised Plaintiff that it verified as accurate the information being reported regarding the Chase Accounts. Trans Union

did not respond to or otherwise address Plaintiff's dispute regarding the Barclays Account. Trans

Union's continued reporting of the Chase Accounts and Barclays Account on Plaintiff's credit

was inaccurate because none of those accounts are attributable to Plaintiff.

29.     In or around November 2020, Plaintiff inquired again with RVA Mortgage

Brokers regarding the financing of a home purchase.

30.     On or about November 7, 2020, in connection with Plaintiff's inquiry and credit

application, Experian and Trans Union each furnished to RVA Mortgage Brokers a consumer

report that contained inaccurate and derogatory information concerning Plaintiff. Specifically,

Experian and Trans Union were each continuing to report the inaccurate and derogatory

information regarding the Chase Accounts and Barclays Account that did not belong to Plaintiff.

Upon information and belief, RVA Mortgage Brokers relied upon the information provided by

Experian and Trans union in making its decision to deny the extension of credit to Plaintiff.

**C.      Plaintiff's January 2021 Disputes**

31.     On or about January 27, 2021, Plaintiff submitted disputes to Experian and Trans

Union, again asserting that the Chase Accounts and Barclays Account did not belong to him, and

requesting that those accounts be removed from his credit file (the "January 2021 Disputes").

With each of his January 2021 Disputes to Experian and Trans Union, Plaintiff provided a copy

of the Police Report.

32.     Plaintiff does not have any record of receiving any reinvestigation results from

Experian in response to his January 2021 Dispute to Experian.

33.     In or around June 2021, Plaintiff obtained a copy of his Experian credit

disclosure, dated June 14, 2021, which revealed that Experian was continuing to inaccurately

report the Chase Accounts and Barclays Account on Plaintiffs credit, even though those accounts are not attributable to Plaintiff.

34.     In response to Plaintiff's January 2021 Dispute Letter to Trans Union, Trans Union mailed to Plaintiff its reinvestigation results, dated February 8, 2021.

35.     Trans Union's February 8, 2021 reinvestigation results indicated that Trans Union deleted the Chase Accounts from Plaintiff's credit file. Trans Union did not respond to or otherwise address Plaintiff's dispute regarding the Barclays Account.

36.     In or around June 2021, Plaintiff obtained a copy of his Trans Union credit disclosure, dated June 14, 2021, which revealed that Trans Union was continuing to inaccurately report the Barclays Account on Plaintiff's credit, even though that account is not attributable to Plaintiff.

**D.      Plaintiff's October 2021 Disputes**

37.     On October 22, 2021, Plaintiff sent letters, each dated October 22, 2021, along with supporting documentation, via certified mail to Experian and Trans Union, respectively, to dispute the inaccurate and derogatory information still being reported on his credit (the "October 2021 Dispute Letters").

38.     Plaintiff paid to the United States Postal Service the costs associated with mailing the October 2021 Dispute Letters via certified mail.

39.     In his October 2021 Dispute Letter to Experian, Plaintiff again disputed Experian's inaccurate reporting of the Chase Accounts and Barclays Account on his credit, asserting that those accounts were not his and requesting that they be deleted or blocked from his credit file.

40.     In his October 2021 Dispute Letter to Trans Union, Plaintiff again disputed Trans Union's inaccurate reporting of the Barclays Account on his credit, asserting that the account was not his and requesting that it be deleted or blocked from his credit file.

41.     In support of his assertions, Plaintiff enclosed with each of his respective October 2020 Dispute Letters a copy of the Police Report.

42.     On or about October 28, 2021, Experian received the October 2021 Dispute Letter that Plaintiff sent to Experian.

43.     In response to Plaintiff's October 2021 Dispute Letter to Experian, Experian mailed to Plaintiff its reinvestigation results, dated November 19, 2021.

44.     Experian's November 19, 2021 reinvestigation results revealed that Experian failed to delete or block any of the information it was reporting regarding the Chase Accounts and the Barclays Account. Instead, Experian indicated that it had verified as accurate the information it was reporting regarding those accounts.

45.     In November 2021, Trans Union mailed to Plaintiff a letter dated November 12, 2021, which indicated that, in order for Trans Union to block information on Plaintiff's credit associated with identity theft, Plaintiff would need to complete and submit Trans Union's Identity Theft Victim Assistance Affidavit (the "Identity Theft Affidavit").

46.     On or about November 15, 2021, Trans Union received the October 2021 Dispute Letter that Plaintiff sent to Trans Union.

47.     In response to Plaintiff's October 2021 Dispute Letter to Trans Union, Trans Union mailed to Plaintiff its reinvestigation results, dated December 17, 2021.

48.     Trans Union's December 17, 2021 reinvestigation results revealed that Trans Union failed to delete or block any of the information it was reporting regarding the Barclays

Account. Instead, Trans Union indicated that it had verified as accurate the information it was reporting regarding that account.

**E.    Plaintiff's February 2022 Disputes**

49.    On February 25, 2022, after completing and signing Trans Union's Identity Theft Affidavit, Plaintiff mailed the original to Trans Union.

50.    Also on February 25, 2022, Plaintiff sent letters, each dated February 24, 2022, along with supporting documentation, via certified mail to Experian and Trans Union, respectively, to dispute the inaccurate and derogatory information still being reported on his credit (the "February 2022 Dispute Letters").

51.    Plaintiff paid to the United States Postal Service the costs associated with mailing the February 2022 Dispute Letters via certified mail.

52.    In his February 2022 Dispute Letter to Experian, Plaintiff again disputed Experian's inaccurate reporting of the Chase Accounts and Barclays Account on his credit, asserting that those accounts were not his and requesting that they be deleted or blocked from his credit file. Plaintiff also disputed some of the personal information that Experian was reporting on Plaintiff's credit that was not attributable to Plaintiff, including four mailing addresses and one telephone number.

53.    In support of his assertions, Plaintiff enclosed with his February 2022 Dispute Letter to Experian a copy of the Police Report.

54.    In his February 2022 Dispute Letter to Trans Union, Plaintiff again disputed Trans Union's inaccurate reporting of the Barclays Account on his credit, asserting that the account was not his and requesting that it be deleted or blocked from his credit file. Plaintiff also

disputed some of the personal information that Trans Union was reporting on Plaintiff's credit that was not attributable to Plaintiff, including four mailing addresses and one telephone number.

55.     In support of his assertions, Plaintiff enclosed with his February 2022 Dispute Letter to Trans Union copies of the completed Identity Theft Affidavit and the Police Report.

56.     On or about March 7, 2022, Experian received the February 2022 Dispute Letter that Plaintiff sent to Experian.

57.     Plaintiff does not have any record of receiving any reinvestigation results from Experian in response to his February 2022 Dispute Letter to Experian.

58.     In or around May 2022, Plaintiff obtained an updated copy of his Experian credit disclosure, dated May 3, 2022, which revealed that Experian was continuing to inaccurately report on Plaintiff's credit the personal information, the Chase Accounts, and the Barclays Account that Plaintiff disputed in his February 2022 Dispute Letter to Experian, even though the personal information and those accounts are not attributable to Plaintiff.

59.     On or about March 2, 2022, Trans Union received the February 2022 Dispute Letter that Plaintiff sent to Trans Union.

60.     In response to Plaintiff's February 2022 Dispute Letter to Trans Union, Trans Union mailed to Plaintiff a letter dated March 9, 2022, which indicated that Trans Union unilaterally decided it would not conduct a reinvestigation of the information that Plaintiff disputed.

61.     In or around May 2022, Plaintiff obtained an updated copy of his Trans Union credit disclosure, dated May 3, 2022, which revealed that Trans Union was continuing to inaccurately report on Plaintiff's credit both the personal information and the Barclays Account

that Plaintiff disputed in his February 2022 Dispute Letter to Trans Union, even though that personal information and account are not attributable to Plaintiff.

**F.      Plaintiff's May 2022 Disputes**

62.      On May 19, 2022, Plaintiff sent letters, each dated May 18, 2022, along with supporting documentation, via certified mail to Experian and Trans Union, respectively, to dispute the inaccurate and derogatory information still being reported on his credit (the "May 2022 Dispute Letters").

63.      Plaintiff paid to the United States Postal Service the costs associated with mailing the May 2022 Dispute Letters via certified mail.

64.      In his May 2022 Dispute Letter to Experian, Plaintiff again disputed Experian's reporting of personal information that was not attributable to Plaintiff, as well as Experian's inaccurate reporting of the Chase Accounts and Barclays Account. Plaintiff requested again that those accounts be deleted or blocked from his credit file.

65.      In support of his assertions, Plaintiff enclosed with his May 2022 Dispute Letter to Experian a copy of the Police Report.

66.      In his May 2022 Dispute Letter to Trans Union, Plaintiff again disputed Trans Union's reporting of personal information that was not attributable to Plaintiff, as well as Trans Union's inaccurate reporting of the Barclays Account, which Plaintiff requested again be deleted or blocked from his credit file.

67.      In support of his assertions, Plaintiff enclosed with his May 2022 Dispute Letter to Trans Union copies of the completed Identity Theft Affidavit and the Police Report.

68.      On or about May 24, 2022, Experian received the May 2022 Dispute Letter that Plaintiff sent to Experian.

69.    In response to Plaintiff's May 2022 Dispute Letter to Experian, Experian mailed to Plaintiff three sets of reinvestigation results, one dated June 7, 2022, one dated June 8, 2022, and one dated June 9, 2022.

70.    Experian's June 7, 2022, June 8, 2022, and June 9, 2022 reinvestigation results all revealed that Experian failed to delete or block any of the information it was reporting regarding the Chase Accounts. Instead, Experian indicated that it updated those accounts to reflect additional charge-off statuses in recent months in the payment history section of the respective trade lines. Experian's reinvestigation results did not respond to or otherwise address Plaintiff's dispute regarding his personal information or the Barclays Account.

71.    On or about May 21, 2022, Trans Union received the May 2022 Dispute Letter that Plaintiff sent to Trans Union.

72.    In response to Plaintiff's May 2022 Dispute Letter to Trans Union, Trans Union mailed to Plaintiff two sets of reinvestigation results, one dated June 5, 2022 and the other dated June 8, 2022.

73.    In its June 5, 2022 reinvestigation results, Trans Union indicated that it reinserted and resumed reporting one of the two derogatory Chase Accounts in Plaintiff's credit file. Specifically, Trans Union indicated it resumed reporting the Chase credit card account, opened on April 12, 2018, with a status of "Charged Off", a past due amount and balance of $3,421, and several charge-off statuses in the account history section of the trade line. The June 5, 2022 reinvestigation results did not address any other accounts or information being reported on Plaintiff's credit.

74.    In its June 8, 2022 reinvestigation results, Trans Union indicated that it deleted the Barclays Account and the disputed personal information from Plaintiff's credit file.

**G.**      **Failure by Experian and Trans Union to Investigate Plaintiff's Disputes**

75.      Experian received all of Plaintiff's disputes but, in each instance, wholly and entirely failed to conduct the reinvestigations required by law with respect to the Chase Accounts and the Barclays Account. Instead, in each of those instances, Experian merely "parroted" the information dictated to it by Chase and Barclays. Further, Experian wholly and entirely failed to provide Plaintiff with a written notice concerning the results of a reinvestigation following its receipt of his September 2020, January 2021, and February 2022 Disputes.

76.      Trans Union received all of Plaintiff's disputes but, in the first instance, wholly and entirely failed to conduct the reinvestigations required by law with respect to the Chase Accounts, and in the first four instances, wholly and entirely failed to conduct the reinvestigations required by law with respect to the Barclays Account. Instead, in each of those instances, Trans Union merely "parroted" the information dictated to it by Chase and Barclays.

77.      Upon information and belief, Trans Union delegated its duty to investigate Plaintiff's disputes to Teleperformance. Teleperformance does not perform any actual investigation of consumers' disputes sent to Trans Union. Instead, after receiving a consumer's dispute from Trans Union, Teleperformance employees or agents merely read the dispute, and then assign to the dispute one of a handful of two-digit codes that best describe the nature of the dispute. Teleperformance employees and agents do not contact consumers or furnishers of information, nor do they conduct any other research into consumers' disputes submitted to Trans Union.

78.      Based upon the position it has taken in previous litigation, Trans Union has no ability to control or manage Teleperformance, its employees, or its agents. *See,* e.g., *Wilcox v. Servis One, Inc.*, No. 1:19-cv-02535-RDB (D.Md. Apr. 14, 2020) (Docket No. 71) (ruling that

Trans Union did not have control or ability to produce for deposition Indian employees of Intelenet).

79.     Upon receiving Plaintiff's May 2022 Dispute concerning the Barclays Account and inaccurate personal information, which dispute letter included a copy of the completed Trans Union Identity Theft Affidavit, Trans Union unilaterally and unreasonably decided not to investigate the dispute and refused to provide notice of the dispute to Barclays.

80.     Experian and Trans Union each had knowledge that they were inaccurately reporting Plaintiff's personal information and accounts that do not belong to Plaintiff on his credit, but deliberately chose to ignore this knowledge, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

81.     Even after receiving several disputes and supporting documentation from Plaintiff indicating the Chase Accounts and Barclays Account were opened as a result of identity theft, Experian and Trans Union deliberately chose to not block the reporting of those accounts, and instead chose to permit the inaccurate reporting on Plaintiff's credit.

82.     Upon information and belief, Experian and Trans Union each published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information about the accounts disputed by Plaintiff.

**H.     Failure by Chase and Barclays to Investigate Plaintiff's Disputes**

83.     Upon information and belief, after receipt of the each of Plaintiff's disputes regarding the Chase Accounts, Experian and Trans Union each forwarded Plaintiff's disputes to Chase.

84.     Upon information and belief, after receipt of the each of Plaintiff's disputes regarding the Barclays Account, Experian forwarded Plaintiff's disputes to Barclays. Upon

information and belief, after receipt of Plaintiff's September 2020 Dispute, January 2021 Dispute, October 2021 Dispute, and May 2022 Dispute regarding the Barclays Account, Trans Union forwarded Plaintiff's disputes to Barclays.

85.     Upon information and belief, Chase and Barclays each utilized the e-OSCAR automated system ("e-OSCAR") and Automated Consumer Dispute Verification ("ACDV") procedures to process Plaintiff's disputes.

86.     Upon information and belief, Chase was provided notice of all of Plaintiff's disputes to Experian and Trans Union regarding the Chase Accounts and, despite receiving these notices, failed and refused to investigate and correct the inaccurate information it was furnishing regarding the Chase Accounts.

87.     Upon information and belief, Barclays was provided notice of all of Plaintiff's disputes to Experian regarding the Barclays Account and, despite receiving these notices, failed and refused to investigate and correct the inaccurate information it was furnishing regarding the Barclays Account. Upon information and belief, Barclays was likewise provided notice of all of Plaintiff's disputes to Experian, with the exception of the February 2022 Dispute, regarding the Barclays Account and, despite receiving these notices, failed and refused to investigate and correct the inaccurate information it was furnishing regarding the Barclays Account.

88.     Because Chase and Barclays furnished inaccurate and derogatory information to Experian and Trans Union, and then chose not to correct the inaccurate information it was furnishing, despite receiving notice of Plaintiff's disputes, inaccurate and derogatory information continued to be reported on Plaintiff's credit.

I.       **Recent Publication of Inaccurate Information on Plaintiff's Credit File**

89.     Plaintiff has applied for credit on several occasions since disputing the inaccurate and derogatory information appearing in his credit files. In connection with Plaintiff's credit applications, Experian and Trans Union have furnished to various creditors consumer reports that contained inaccurate and derogatory information concerning Plaintiff. Upon information and belief, several creditors have relied upon inaccurate information contained in those consumer reports in making their decision regarding the extension of credit to Plaintiff, and on at least one occasion, Plaintiff was denied credit as a result of the disputed inaccurate and derogatory reporting regarding the Chase Accounts and the Barclays Account on his credit.

90.     Although Plaintiff has wanted to obtain financing for the purchase of a home for some time, he became discouraged from applying because he feared the inaccurate and derogatory information regarding the Chase Accounts and Barclays Account being reported on his credit would continue to cause his credit applications to be denied.

91.     Through their violations of Plaintiff's rights under the FCRA, Experian, Trans Union, Chase, and Barclays have all caused damage to Plaintiff, and continue to damage Plaintiff.

**V.**

**CLAIMS FOR RELIEF**

**COUNT ONE:**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b) (EXPERIAN AND TRANS UNION)**

92.     Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

93.     Experian and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they each furnished and maintained concerning Plaintiff.

94.     As a result of Experian's and Trans Union's violations of 15 U.S.C. § 1681e(b), inaccurate and derogatory information was reported on Plaintiff's credit and was published to third parties.

95.     As a result of Experian's and Trans Union's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

96.     The violations by Experian and Trans Union were willful, rendering Experian and Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Experian and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

97.     Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Experian and Trans Union in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT TWO:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a) (EXPERIAN, AND TRANS UNION)

98.     Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

99.     After Plaintiff disputed the inaccurate information on his respective consumer reports, Experian and Trans Union each violated 15 U.S.C. § 1681i(a)(1) by failing to conduct

reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete or block the item from Plaintiff's credit file. Further, in one instance, Trans Union wrongfully and without any reasonable justification refused to conduct a reinvestigation and refused to provide notice to the furnisher following receipt of Plaintiff's detailed and documented dispute concerning the accuracy of information being reported in his credit file.

100.    After Plaintiff disputed the inaccurate information in his respective consumer reports, Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct any reinvestigation at all to determine whether the disputed information was inaccurate. Instead of conducting its own investigations of Plaintiff's disputes, as the FCRA requires consumer reporting agencies to do, Trans Union chose to delegate their investigation responsibilities to Teleperformance, a third party over which Trans Union is unable exert control. Trans Union's delegation of its investigation duties to a third party who is not its agent resulted in Plaintiff's disputes to Trans Union not being investigated by the consumer reporting agency to whom Plaintiff submitted his disputes.

101.    After Plaintiff disputed the inaccurate information in his respective consumer reports, Experian and Trans Union violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

102.    After Plaintiff disputed the inaccurate information in his respective consumer reports, Experian and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

103.    After it received Plaintiff's September 2020, January 2021, and February 2022 Disputes, respectively, Experian violated 15 U.S.C. § 1681i(a)(6) by failing to provide written notice to Plaintiff of the results of a reinvestigation not later than 5 days after the completion of a reinvestigation.

104.    As a result of Experian's and Trans Union's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

105.    The violations by Experian and Trans Union were willful, rendering Experian and Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Experian and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

106.    Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT THREE:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1) (CHASE AND BARCLAYS)

107.    Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

108.    On one or more occasions within the past two years, by example only and without limitation, Chase and Barclays each violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

109.    On one or more occasions within the past two years, by example only and without limitation, Chase and Barclays each violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian and Trans Union in connection with Plaintiff's disputes.

110.    On one or more occasions within the past two years, by example only and without limitation, Chase and Barclays each violated 15 U.S.C. § 1681s-2(b)(1)(E), by failing to modify, delete, or permanently block the representations about accounts within Plaintiff's credit files with Experian and Trans Union to remove references to the Chase Accounts and Barclays Account and prevent them from being refurnished to any consumer reporting agency.

111.    The law in this District, the Fourth Circuit, and even nationally was long ago articulated to require a detailed and searching reinvestigation by a creditor when it receives a consumer's FCRA dispute through a consumer reporting agency. See *Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004).

112.    Chase and Barclays were aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

113.    Chase and Barclays each understood the nature of Plaintiff's disputes when they received them from Experian and Trans Union.

114.    Upon information and belief, the procedures that the employee(s) or agent(s) of Chase and Barclays followed regarding Plaintiff's respective FCRA disputes through e-Oscar were the procedures that Chase and Barclays intended its employees or agents to follow.

115.    Upon information and belief, the employee(s) or agent(s) of Chase and Barclays did not make a mistake in the way in which they followed Chase's and Barclays' respective

procedures when they received, processed and responded to the respective ACDV's from Experian and Trans Union.

116.   As a result of Chase's and Barclays' violations of 15 U.S.C. § 1681s-2(b)(1), inaccurate and derogatory information continued to be reported on Plaintiff's credit, and Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

117.   The violations by Chase and Barclays were willful, rendering Chase and Barclays liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Chase and Barclays were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

118.   Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Chase and Barclays in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## VI.

### DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)   Award Plaintiff actual and punitive damages for violations of the FCRA by Experian, Trans Union, Chase, and Barclays;

(2)   Award Plaintiff attorney's fees and costs under the FCRA;

(3)   Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4)   Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

**YANGZENG YU**

By:

/s/ Mark C. Leffler
Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Stephen F. Relyea, VSB# 77236
Boleman Law Firm, P.C.
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
Email: sfrelyea@bolemanlaw.com

*Counsel for Plaintiff*